**Joseph Patrick ROBINSON, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 82–6133.

United States Court of Appeals, Eleventh Circuit.

June 18, 1984.

Stanley Marcus, U.S. Atty., Patricia D. Kenney, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for defendant-appellant.

Louis Vernell, North Miami Beach, Fla., for plaintiff-appellee.

Before FAY and ANDERSON, Circuit Judges, and MARKEY *, Chief Judge of the Federal Circuit.

MARKEY, Chief Judge:

Appeal from a Final Judgment of the United States District Court for the Southern District of Florida, entered September 9, 1982, and ordering the government to return to Robinson $82,603 and other personal property it had seized. We affirm.

## Background

On September 11, 1981, Robinson was arrested upon arrival in the United States from Nassau, Bahamas for allegedly making a false statement on a United States Customs form regarding the amount of United States currency and negotiable instruments he was carrying into this country and for transporting such currency and negotiable instruments. Robinson was released on bond on September 14, 1981. No indictment or information was filed until August 23, 1982, when Robinson was indicted for alleged violations of federal law governing transportation of currency into the United States. The subsequent criminal proceeding was dismissed on January 5, 1983 for failure to comply with the Speedy Trial Act; an appeal of that dismissal is pending.

At the time of the arrest, officers of the United States Customs Service seized $82,603 in currency and other personal property of Robinson, who filed this action on November 18, 1981 for return of the items seized. The present complaint alleges, *inter alia*, that the government's retention of the seized items was "wrongful and unlawful and in contravention of [Robinson's] constitutional rights".

Robinson's complaint was served on the United States Attorney on November 27, 1981, and on the Attorney General of the United States on November 30, 1981. On March 22, 1982, the district court issued an order noting the absence of a government response and directing the government to advise the court within ten days what it intended to do with the case. Ten days later, on April 1, 1982, Robinson sought and obtained entry of a default under Rule 55(a) of the Federal Rules of Civil Procedure for failure of the government to respond to the complaint. Rule 55(a) states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default". Robinson made clear that he was not seeking entry of judgment at that time but that, after entry of the default, an evidentiary hearing should be held at which the court could consider evidence in support of the entry of a default judgment. Rule 55(e), acknowledged by Robinson in his motion for default, states:

---

* Honorable Howard T. Markey, Chief Judge, U.S. Court of Appeals for the Federal Circuit, sitting by designation.

"No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court".

Robinson sought a Final Default Judgment and a hearing was held on June 3, 1982. At the hearing, the government explained that the Assistant United States Attorney (AUSA) on the case had been ill for two months, that the AUSA had a large case load, that the case "may have slipped through the cracks", and that it had been unaware of the entry of default until notice of the hearing. Robinson argued that the complaint allegations are supported by the documentary material of record, that he was present to testify, and that default judgment should be entered. The court stated it was "somewhat inclined to agree" with Robinson's position, was "very, very much inclined" to grant the requested relief, and was "at a loss" to understand the government's position. However, in response to its request for time to respond to the complaint and to file a forfeiture proceeding, the court allowed the government five days "to file something" indicating why the court should not enter a default judgment.

Confronting further problems (illness and transfer of the assigned AUSA), the government was apparently unable to file anything within the five days allowed, but did file a forfeiture proceeding on June 18, 1982. The government filed on June 21, 1982 a motion to dismiss Robinson's complaint (asserting lack of jurisdiction and failure to state a claim) and a motion to transfer the complaint to the judge handling the forfeiture proceeding.[1] The AUSA who filed the motion to dismiss was not the one who attended and stated at the June 3 hearing that the government did not know of the default until notice of the hearing. The new AUSA, saying she did not learn of the default until the week of August 3, filed on August 24, 1982 a mo-

tion to set aside the entry of default and an affidavit stating that the government's failure to respond timely to the complaint filed in November, 1981 was due to inadvertent failure of the United States Attorney's staff to calendar the complaint for response.

On September 9, 1982, the district court, without specifically ruling on the government's motions to set aside the default and to dismiss, entered a Final Judgment ordering return of the seized property. The court concluded that in light of the default, Robinson's affidavit, and the evidence adduced, the government had failed to demonstrate any lawful basis for continued retention of Robinson's property. In subsequent orders, the court stated that "the institution of proceedings here, some ten months after the subject currency was seized, demonstrates a denial of due process rights", and referred to:

the government's almost continuous mishandling of the case sub judice as typified by the default entered against it on April 1, 1982 (almost five months after process was effected), the commencement of forfeiture proceedings some ten months after its seizure of the subject currency, and myriad instances reflected in the record evidencing its delay or neglect. The cummulative effect of this conduct resulted in this Court finding, by Order dated November 17, 1982, the Plaintiff's due process rights had been denied.

The government filed this appeal and this court stayed execution of the Final Judgment pending the outcome here. The government argues that the district court had no power to order return of the seized property after the forfeiture proceeding was filed, and, if it had such power, its implied denial of the government's motion to set aside the entry of default constituted an abuse of discretion. The government does not urge, nor did it before the district

---

**1.** A motion under Rule 55(c) to set aside the entry of default would appear to have been more appropriate. That Rule states: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)".

court, that Rule 55(e) precludes default judgment against the Government. The district court apparently concluded that a sufficient amount of evidence "satisfactory to the court" (*e.g.*, documents and arguments at the June 3 hearing) was presented to establish Robinson's claim.

### ISSUES

(1) Whether the district court had the power to order return of seized property on the basis of default.

(2) Whether the district court abused its discretion in not setting the default aside.

### OPINION

It is sad and sombre soliloquy, but many a judge has noted the potential for suffocation of justice in the mound of paperwork generated by a litigious society. The present case is exemplary. When, however, understandably, the rules are not followed by the humans who must staff a government agency struggling against the paper flow, something has to give. However the government v. citizen balance may be struck in other cases, it must be struck here in favor of Robinson.

A. *The District Court had the power to order a return of the property on the basis of default.*

■ An unreasonably long retention without instituting a forfeiture proceeding can constitute a denial of due process, *see e.g., United States v. $8,850 in United States Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983); *United States v. $23,407.69 in United States Currency*, 715 F.2d 162 (5th Cir.1983). It has been the basis for dismissal of a forfeiture action, *United States v. $23,407.69, supra*, and for a private motion or action, *see e.g., Ferris v. United States*, 511 F.Supp. 795 (D.Nev.1981); *Boston v. Stephens*, 395 F.Supp. 1000 (S.D.Ohio 1975).

The government argues that *Castleberry v. Alcohol, Tobacco and Firearms Division*, 530 F.2d 672 (5th Cir.1972), which is binding on us, *Bonner v. City of Prichard*,

*Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981), precludes the relief ordered here by the district court. *Castleberry* (says the government) limits relief to a requirement that the *government* decide either to institute forfeiture proceedings or to return the seized property.

In *Castleberry*, however, no default had been entered, the district court's order to return property issued only thirty-four days after the seizure, thirteen days after the private complaint was filed, and four days before the government's forfeiture action. Left open was the possibility that other situations might warrant a different result:

> Instances may arise in which due to extraordinary circumstances, manifest bad faith on the part of government agents, or irreparable damage to the plaintiff, more immediate and drastic relief would be appropriate.

530 F.2d at 675. We hold that the present instance falls among those envisaged by our predecessor court in *Castleberry*.

The government desires that we limit the district court's ability to fashion appropriate relief, merely because it filed a forfeiture proceeding after entry of default. We decline the invitation. Parties to private actions must abide the Federal Rules and trial courts must be free to enforce those Rules. Allowing the government to avoid its responsibility under the Rules merely by filing a forfeiture action after default entry would contribute nothing to the respect due the judicial process.

■ The district court's power to order relief is derived from "the equitable powers of the district court necessarily inherent in the court's supervision of its own docket". *Castleberry*, 530 F.2d at 677. *Accord, Mr. Lucky Messenger Service v. United States*, 587 F.2d 15, 16–17 (7th Cir.1978); *United States v. Premises Known*, 584 F.2d 1297, 1302 (3rd Cir.1978). The government argues that under *Hunsucker v. Phinney*, 497 F.2d 29 (5th Cir.1974), the power to fashion relief is limited in this case by equitable considerations. On the contrary,

equitable considerations compel the relief here granted.

Entry of default for the government's failure to plead for four months is one such consideration. *Compare, United States v. $8,850,* 103 S.Ct. at 2314 (where government acted with "due speed", no due process violation found). Another is the government's having deprived Robinson of a substantial sum for considerable time without filing for forfeiture and without to this day filing an answer to his complaint. "Being deprived of this substantial sum of money for [such a significant period of time] is undoubtedly a significant burden". *United States v. $23,407.69, supra,* 715 F.2d at 166. On the other hand, as was the case in *United States v. $8,850, supra,* 103 S.Ct. at 2014, Robinson acted promptly to obtain return of his money.

Lastly on the power of the district court, the government argues that the forfeiture court acquires jurisdiction over the res and the private action court (though the private action was filed first) cannot remove that in rem jurisdiction. No authority is cited, however, for the proposition that a district court which has entered a default loses its jurisdiction and ability to grant relief the moment an in rem proceeding is thereafter filed. None of the three cases cited by the government involved entry of a default: *United States v. Amore,* 335 F.2d 329 (7th Cir.1964) (order for return of money *after* Secretary of Treasury had given notice of forfeiture proceedings); *United States v. Rapp,* 539 F.2d 1156 (8th Cir.1976) (Rule 41(e) motion held improper because filed after conviction; no separate complaint filed); *United States v. Fields,* 425 F.2d 883 (3rd Cir.1970) (district court had no jurisdiction to return property to a non-party).

**B.** *The District Court did not abuse its discretion in refusing to set the default aside.*

■ Action on a motion to set aside a default is within the discretion of the district court, *McGrady v. D'Andrea Electric, Inc.,* 434 F.2d 1000 (5th Cir.1970). Hence a denial of the motion will not be set aside on appeal unless there was an abuse of discretion. We find no such abuse here.

■ The government says its default was not willful. Few defaults are. Due process is no less denied by neglect than by wilfulness. Here the district court found that the government "continuously mishandled" the matter. It failed to respond in any manner to the complaint for over six months. It failed to respond in any manner to the March 22, 1982 order directing it to advise the court of its intention within 10 days. It made no response to the April 1, 1982 entry of default, until at the June 3 hearing it said it had been unaware of that entry. Given five days to file something to counter entry of default judgment, it waited 15 days and then filed a forfeiture proceeding 10 months after seizing the property. It waited 18 days, after being given five, to file a motion to dismiss. Such negligent prosecution weighs heavily in favor of the district court's refusal to set aside the default.

The government's argument concerning the need to balance prejudice to Robinson against its allegedly meritorious defense to his complaint fails in light of two considerations: (1) the denial of due process to Robinson is prejudicial; (2) belated filing of a forfeiture proceeding does not retroactively wipe the slate clean of that denial. We do not here face, and therefore need not discuss, the type of situation on which the government's argument is based, i.e., a virtually simultaneous filing of a forfeiture proceeding and a private action for recovery.

CONCLUSION

This court's stay of execution of the district court's Final Judgment is accordingly vacated and that Final Judgment is affirmed.

AFFIRMED.